# IN THE SUPREME COURT OF CALIFORNIA

ANGELICA RAMIREZ,

Plaintiff and Respondent,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant and Appellant.

S273802

Second Appellate District, Division Four

B309408

Los Angeles County Superior Court

20STCV25987

July 15, 2024

Justice Corrigan authored the opinion of the Court, in which Chief Justice Guerrero and Justices Liu, Kruger, Groban, Jenkins, and Evans concurred.

RAMIREZ v. CHARTER COMMUNICATIONS, INC.

S273802

Opinion of the Court by Corrigan, J.

Defendant was sued by a former employee and unsuccessfully moved to compel arbitration. The trial court and the Court of Appeal concluded the arbitration agreement contained unconscionable provisions and declined to enforce it. We too conclude that certain provisions are substantively unconscionable. The next question revolves around remedy. Should the courts have refused to enforce the agreement, or could they have severed the unconscionable provisions and enforced the rest? We conclude the matter must be remanded for further consideration of this question in light of the conclusions and the analysis set out here. We also conclude the Court of Appeal's decision did not violate the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA).

## I.   BACKGROUND

### A. Proceedings Below and Grant of Review

Defendant Charter Communications, Inc. (Charter) has nearly 100,000 employees and provides telecommunications services throughout the United States. Charter has adopted an alternative dispute resolution program called Solution Channel, which it describes as "the means by which a current employee, a former employee, an applicant for employment, or Charter can efficiently and privately resolve covered employment-based legal disputes."

1

Charter job applicants had to agree to use Solution Channel. If a job offer was made, prospective employees used a computerized onboarding process. They were required to read several company documents and policies and to agree by use of an electronic signature. Those documents included a Mutual Arbitration Agreement (Agreement) and the Solution Channel Guidelines (Guidelines).

Charter hired plaintiff Angelica Ramirez in July 2019. Using the onboarding process, Ramirez accepted the proposed Agreement, including adherence to the Guidelines. In May 2020, Ramirez was fired. She sued Charter in July 2020, alleging claims for discrimination, harassment, and retaliation under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA) along with a claim of wrongful discharge in violation of public policy.[1]

Relying on the Agreement, Charter moved to compel arbitration and to recover the attorney fees incurred in seeking that ruling. In opposition, Ramirez argued the Agreement was procedurally unconscionable as a contract of adhesion, and that several provisions were substantively unconscionable as well. The challenged provisions included those: describing which claims were subject to and excluded from arbitration; imposing a shortened filing period for certain claims; limiting the discovery available in arbitration; and allowing Charter to recover attorney fees in a manner contrary to FEHA. Charter

---

[1] Ramirez initially filed a complaint with the Department of Fair Employment and Housing (DFEH) for employment discrimination under FEHA, waived her right to a DFEH investigation, and requested an immediate right-to-sue letter. The request was granted.

urged the Agreement was not unconscionable. Alternatively, it argued that, if certain provisions were so held, they should be severed and the balance of the Agreement enforced.

The trial court found that the Agreement was one of adhesion because it was required as a condition of employment. It concluded the Agreement was substantively unconscionable because it shortened the time for filing a claim; violated FEHA by failing to limit Charter's recovery of attorney fees to cases involving frivolous or bad faith claims; and impermissibly allowed an interim fee award to a party which successfully compelled arbitration. The court rejected arguments that the discovery limitations and the exclusion of some claims were unconscionable. Finding the Agreement was "permeated with unconscionability," the court refused to enforce it and denied the motion to compel arbitration. Charter appealed.

The Court of Appeal affirmed the denial of Charter's motion, although it disagreed with aspects of the trial court's reasoning and concluded additional provisions were unconscionable. The court also disagreed with *Patterson v. Superior Court* (2021) 70 Cal.App.5th 473 (*Patterson*) as to the enforceability of a provision calling for an interim award of attorney fees following a successful motion to compel.

We granted review to resolve that conflict and to determine whether the Court of Appeal erred in concluding the Agreement was unconscionable because it lacked mutuality in terms of the claims subject to and excluded from arbitration; shortened the period for filing claims; and truncated discovery. We also agreed to resolve whether the Court of Appeal's refusal to sever the unconscionable provisions and enforce the Agreement violated the FAA.

## B. Relevant Provisions of the Agreement and the Guidelines

In Section A of the Agreement, Ramirez and Charter "mutually agree" that "any dispute arising out of or relating to [Ramirez's] pre-employment application and/or employment with Charter or the termination of that relationship, except as specifically excluded below, must be resolved through binding arbitration by a private and neutral arbitrator, to be jointly chosen by [Ramirez] and Charter." Sections B and C modify Section A and specify certain claims as subject to (Section B) or excluded from (Section C) arbitration. Among other claims, those for wrongful termination, discrimination, harassment, and retaliation are made subject to arbitration.

Section E limits the time for filing an arbitration claim. Section I provides that the "arbitrator will decide all discovery disputes related to the arbitration" and that all arbitration proceedings are conducted pursuant to the Guidelines.

Section K governs the allocation of arbitral costs, fees, and expenses. It requires that Charter pay "AAA administrative fees" and "the arbitrator's fees and expenses." "All other costs, fees and expenses associated with the arbitration, including without limitation each party's attorneys' fees, will be borne by the party" incurring them. Section K goes on to provide that "the failure or refusal of either party to submit to arbitration as required by this Agreement will constitute a material breach of this Agreement. If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting arbitration submits to arbitration following the commencement of the action or proceeding, the party that resisted arbitration will be required to pay to the other party all costs, fees and expenses that they

incur in compelling arbitration, including, without limitation, reasonable attorneys' fees."

As relevant here, the Guidelines set out general procedural rules for arbitration. These include how discovery is to be conducted and a provision that the "prevailing party" may recover, at the arbitrator's discretion, "any remedy that the party would have been allowed to recover had the dispute been brought in court."

## II. DISCUSSION

Federal and California law treat valid arbitration agreements like any other contract and favor their enforcement. (9 U.S.C. § 2; *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*Kho*); *Torrecillas v. Fitness Internat., LLC* (2020) 52 Cal.App.5th 485, 492 (*Torrecillas*).) The California Arbitration Act (Code Civ. Proc., § 1280 et seq.; CAA) expresses a " ' "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' " (*Kho*, at p. 125, quoting *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) A written agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable, "save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) Unconscionability provides such grounds. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 99 (*Armendariz*).)

The "general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." (*Kho, supra,* 8 Cal.5th at p. 125; see also *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1243 (*Baltazar*).)

Unconscionability has both a procedural and a substantive element. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).) The party resisting enforcement of an arbitration agreement has the burden to establish unconscionability. (*Id.* at p. 236.)

Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.) This element is generally established by showing the agreement is a contract of adhesion, i.e., a "standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (*Yeng Sue Chow v. Levi Strauss & Co.* (1975) 49 Cal.App.3d 315, 325 (*Yeng Sue Chow*).) Adhesion contracts are subject to scrutiny because they are "not the result of freedom or equality of bargaining." (*Ibid.*) However, they remain valid and enforceable unless the resisting party can also show that one or more of the contract's terms is substantively unconscionable or otherwise invalid.

Substantive unconscionability looks beyond the circumstances of contract formation and considers "the fairness of an agreement's actual terms" (*Pinnacle, supra*, 55 Cal.4th at p. 246), focusing on whether the contract will create unfair or one-sided results (*Armendariz, supra*, 24 Cal.4th at p. 114). Substantively unconscionable contractual clauses "reallocate risks in an objectively unreasonable or unexpected manner." (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 703 (*Serpa*); see also *Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 447 (*Lange*).)

Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree. (*Baltazar*, *supra*, 62 Cal.4th at p. 1243.) Courts apply a sliding scale analysis under which "the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, 24 Cal.4th at p. 114.) "[W]hether a contract is fair or works unconscionable hardship is determined with reference to the time when the contract was made and cannot be resolved by hindsight by considering circumstances of which the contracting parties were unaware." (*Yeng Sue Chow*, *supra*, 49 Cal.App.3d at p. 325.)

Appellate review of an order regarding an arbitration agreement's validity is de novo if the evidence is not in conflict and the ruling is based entirely on an interpretation of law. (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.) If a validity ruling rests on the trial court's resolution of evidentiary disputes, substantial evidence review applies to the court's factual findings. (*Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 283 (*Magno*).) The facts here are undisputed; our review is de novo.

## A. Procedural Unconscionability

The trial court and the Court of Appeal ruled that the Agreement was procedurally unconscionable because it was an adhesion contract required as a condition of employment. Charter does not challenge that conclusion. Instead, it urges the degree of unconscionability is low because the Agreement's adhesive nature is the only basis for that finding. (See *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 981 (*Dotson*).)

We have previously explained that there are " 'degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. [Citation.] Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and "bear within them the clear danger of oppression and overreaching." [Citation.]' " (*Baltazar, supra*, 62 Cal.4th at p. 1244, quoting *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 469.) Courts "must be 'particularly attuned' to this danger in the employment setting, where 'economic pressure exerted by employers on all but the most sought-after employees may be particularly acute.' " (*Baltazar*, at p. 1244, quoting *Armendariz, supra*, 24 Cal.4th at p. 115; see also *Kho, supra*, 8 Cal.5th at p. 127.) Thus, although adhesion alone generally indicates only a low degree of procedural unconscionability, the potential for overreaching in the employment context warrants close scrutiny of the contract's terms.

### B. Substantive Unconscionability

A court should consider substantive unconscionability only after procedural unconscionability has been established. A "conclusion that a contract contains no element of procedural unconscionability is tantamount to saying that, no matter how one-sided the contract terms, a court will not disturb the contract because of its confidence that the contract was negotiated or chosen freely, that the party subject to a seemingly one-sided term is presumed to have obtained some advantage

from conceding the term or that, if one party negotiated poorly, it is not the court's place to rectify these kinds of errors or asymmetries." (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 470.)

As we observed in *Baltazar, supra*, 62 Cal.4th 1237, the unconscionability doctrine " 'ensures that contracts . . . do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' " [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided" [citation]. All of these formulations point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party" [citation].' " (*Baltazar*, at p. 1244, quoting *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1145 (*Sonic*).) " 'Commerce depends on the enforceability, in most instances, of a duly executed written contract. A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain. Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: "overly harsh," "unduly oppressive," "unreasonably favorable." [Citation.] [¶] The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' " (*Baltazar*, at p. 1245, quoting *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911−912 (*Sanchez*).)

The Court of Appeal concluded that four aspects of the Agreement were substantively unconscionable: (1) the lack of mutuality in the covered and excluded claims provisions; (2) the shortened limitations periods for filing; (3) the limited number

of permitted depositions; and (4) the potential for an unlawful award of attorney fees.  We discuss these in turn.

### 1. Covered and Excluded Claims

Ramirez asserted the Agreement was unconscionable because it compelled arbitration of claims more likely to be brought by an employee and excluded claims more likely to be brought by Charter.  The trial court rejected the argument, but the Court of Appeal did not.  It held the lack of mutuality in the Agreement's covered and excluded claims clauses was substantively unconscionable.  We agree.

An arbitration agreement need not "mandate the arbitration of all claims between" the parties.  (*Armendariz*, *supra*, 24 Cal.4th at p. 120.)  However, if an agreement singles out certain claims for arbitration, there must be "mutuality." (*Ibid*.)  The agreement cannot require "one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences."  (*Ibid*.; see also *Pinnacle*, *supra*, 55 Cal.4th at pp. 248−249.)  Instead, a " 'modicum of bilaterality' " is required. (*Armendariz*, at p. 117.)  *Armendariz* explained: "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities' . . .  If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for this lack of mutuality,

arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage. Arbitration was not intended for this purpose." (*Id.* at pp. 117–118.) "Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope, . . . the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." (*Id.* at p. 118.)

As *Armendariz* made clear, unconscionability turns on both a one-sided result and the absence of justification for it. (*Armendariz, supra,* 24 Cal.4th at pp. 117−118.) We held "that an employer may not impose a system of arbitration on an employee that seeks to maximize the advantages and minimize the disadvantages of arbitration for itself at the employee's expense," but we also "emphasize[d] that if an employer does have reasonable justification for the arrangement — i.e., a justification grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum — such an agreement would not be unconscionable." (*Id.* at p. 120.) In the absence of justification, we assume the agreement is unconscionable. (*Ibid.*)

Section B of the Agreement identifies covered claims as those that "will be submitted to arbitration." The term "covered claims" is generally defined as "all disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common

law, or statutory claims." Covered claims include those for: (1) unlawful termination; (2) unlawful failure to hire or promote; (3) unlawful discrimination, harassment, or retaliation; (4) wage and hour disputes; (5) violations of the Family Medical Leave Act, the Americans with Disabilities Act, or other similar state laws; (6) violations of whistleblower laws or the Sarbanes-Oxley Act; (7) violations of the Occupational Health and Safety Act or other similar laws; (8) improper background checks; (9) collection of overpaid wages and commissions; (10) recovery of reimbursed tuition, relocation expense, or unauthorized company credit card charges; and (11) damage to or loss of Charter property.[2] The Guidelines

---

[2] Section B provides in full: "You and Charter mutually agree that the following disputes, claims, and controversies (collectively referred to as 'covered claims') will be submitted to arbitration in accordance with this Agreement: [¶] 1. all disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), including without limitation claims for: collection of overpaid wages and commissions, recovery of reimbursed tuition or relocation expense reimbursement, damage to or loss of Charter property, recovery of unauthorized charges on company credit card; claims for unlawful termination, unlawful failure to hire or failure to promote, wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses); unlawful discrimination or harassment (including such claims based upon race, color, national origin, sex, pregnancy, age,

identify the first eight categories of claims as "employee claims" and the last three as "Charter claims."

Section C of the Agreement generally excludes from arbitration "[a]ll other claims not covered under Section B." It goes on to list as "specifically excluded" claims: (1) for workers' compensation benefits; (2) for unemployment compensation benefits; (3) for violations of the National Labor Relations Act; (4) for violations of the Employee Retirement Income Security Act of 1974, or for breach of certain employee benefits or welfare plans; (5) arising under the Health Information Portability and Accountability Act of 1996; (6) arising under certain separation or severance agreements or noncompete agreements; (7) related to corrective action or other performance management that does

---

religion, sexual orientation, disability, and any other prohibited grounds), claims for unlawful retaliation, claims arising under the Family Medical Leave Act, Americans with Disabilities Act or similar state laws, including unlawful denial of or interference with a leave of absence, claims for unlawful denial of accommodation or failure to engage in the interactive process, whistleblower claims, claims for violations of the Sarbanes-Oxley Act, claims for violations of Occupational Safety and Health Administration or other safety or occupational health, whether arising before, during or after termination of your employment, claims related to background and any and all other pre-employment and employment checks, including any claims brought under the Fair Credit Reporting Act and/or similar federal, state or local statutes or ordinances; [¶] 2. all disputes, claims, and controversies set forth in Section B.1 above, whether made against Charter, or any of its subsidiaries, parent, or affiliated entities, or its individual officers, directors, shareholders, agents, managers, or employees (in an official or personal capacity, if such claim against the employee arises from or in any way relates to your pre-employment or employment relationship with Charter); [¶] 3. all disputes related to the arbitrability of any claim or controversy."

not result in termination; (8) older than the applicable statute of limitations; (9) for injunctive and equitable relief "related to unfair competition and the taking, use or unauthorized disclosure of trade secrets or confidential information"; (10) for theft, embezzlement, or any criminal conduct; (11) covered by any collective bargaining or severance agreement or a written employment contract; (12) that were previously adjudicated; (13) for the assertion of any party's intellectual property rights; and (14) that are "expressly non-arbitrable by statute, including 12 USC § 5567(d)(2), 7 USC § 26(n), or 18 USC § 1514(e)(2)." The Guidelines classify the first eight categories of excluded claims as "employee claims," the ninth, tenth, eleventh, and twelfth categories as "Charter claims," and the thirteenth category as both an "employee" and a "Charter" claim.[3]

The Court of Appeal held the Agreement "is unfairly one-sided because it compels arbitration of the claims more likely to be brought by an employee, the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by an employer, the stronger party." For support, the Court of Appeal relied on *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167 (*Mercuro*) and *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702 (*Fitz*). Evaluating agreements with coverage and exclusion clauses similar to those found in the Agreement, those Courts of Appeal concluded the agreements before them were substantively unconscionable because they "compel[led] arbitration of the claims employees are most likely to bring" and "exempt[ed] from arbitration the claims [the employer] is most

---

[3]     The Guidelines do not identify the fourteenth category as either an "employee" claim or a "Charter" claim.

likely to bring against its employees." (*Mercuro*, at p. 176; accord *Fitz*, at pp. 724–726.)

Here, the Court of Appeal's finding that mutuality was lacking is well supported. As Charter's own Guidelines make clear, a wide range of statutory and policy-based claims that would typically be initiated by an employee are directed into arbitration. On the other hand, only a small subset of claims that would typically be initiated by Charter are similarly directed. Meanwhile, the Agreement specifically excludes claims related to intellectual property rights and severance or noncompete agreements, claims for equitable relief related to unfair competition or the disclosure of trade secrets or confidential information, and claims for theft or embezzlement. Though the Guidelines classify the first two as "Charter" and "employee" claims, both are more likely to be employer-initiated. (See, e.g., *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 916 (*Davis*); *Fitz*, *supra*, 118 Cal.App.4th at p. 725; *Mercuro*, *supra*, 96 Cal.App.4th at p. 176.) Further, several of the exclusions for "employee claims" appear to be illusory. Workers' compensation and unemployment insurance claims are excluded from arbitration by law. (Lab. Code, § 3602, subd. (a); see *Rebolledo v. Tilly's, Inc.* (2014) 228 Cal.App.4th 900, 919.) Claims that have expired under an applicable statute of limitations cannot be brought in court. Thus, the contractual exclusion of those claims provides no additional benefit to employees.

This lack of mutuality is indicative of substantive unconscionability. Charter resists this conclusion, arguing the Agreement is "fundamentally mutual" because it requires arbitration of claims Charter is likely to initiate and "exempts numerous types of claims that could be brought by an employee." Relying on the Guidelines, Charter urges the exclusions for

claims related to intellectual property and separation agreements are mutual "because either Charter or a Charter employee could bring such claims." That argument fails. While Ramirez *could* bring those types of claims, that remote possibility does not change the conclusion that the Agreement, as a whole, tends to exempt claims likely to be made by Charter while directing Ramirez's likely claims into arbitration. As noted above, *Armendariz* requires arbitration agreements to have a modicum of bilaterality. (*Armendariz, supra*, 24 Cal.4th at p. 117.) But "nothing in *Armendariz* supports the conclusion that the presence of a modicum of bilaterality renders an agreement per se conscionable. The presence of a modicum of bilaterality will not save a clause that is, in practical effect, unjustifiably one sided." (*Cook v. University of Southern California* (2024) 102 Cal.App.5th 312, 327.)

Charter also argues there is nothing unfair about the exclusion of claims for injunctive or equitable relief based on unfair competition and the taking, use, or unauthorized disclosure of trade secrets or confidential information. Charter urges this exclusion is no broader than the protection provided by Code of Civil Procedure section 1281.8, subdivision (b), which allows a "party to an arbitration agreement [to] file [in court] an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." In *Baltazar, supra*, 62 Cal.4th 1237, we held that an arbitration agreement that "does no more than recite the procedural protections already secured" was not substantively unconscionable. (*Baltazar*, at pp. 1247−1248.) We held this was so "regardless of whether [the defendant was], practically speaking, more likely to seek

provisional remedies than its employees," because "simply reciting the parties' rights under section 1281.8 does not place [the plaintiff] at an unfair disadvantage." (*Baltazar*, at p. 1248.)

Contrary to Charter's assertion, the exclusion's language exceeds the protections offered by the Code of Civil Procedure provision. *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227 is instructive. There, an arbitration agreement required an employee to arbitrate all disputes she had with her employer but allowed the employer to obtain an injunction to restrain the employee from breaching the agreement's nondisclosure and exclusive use provisions. (*Carbajal*, at p. 249.) The employer argued the carve-out for injunctive relief was not unconscionable because it only provided the employer with rights "already granted" by the Code of Civil Procedure section. (*Carbajal*, at p. 250.) *Carbajal* rejected that argument. It reasoned that the statute "only authorizes a party to an arbitration agreement to seek a preliminary injunction or other provisional remedy 'upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief.' " (*Ibid*.) By contrast, "the injunctive relief carve-out broadly authorizes [the employer] to seek any type of injunctive relief in court." (*Ibid*.) As in *Carbajal*, the Agreement here excludes any request for injunctive relief, including one for a permanent injunction, related to unfair competition or unauthorized use of trade secrets or confidential information. This type of claim is more likely to be initiated by Charter, and the protection provided by the exclusion goes beyond that provided by the Code of Civil Procedure provision.

The finding that the claims clauses lacked mutuality is well supported. But that finding alone is not sufficient to establish unconscionability. As explained, unconscionability in

17

this context requires a one-sided result along with the absence of a justification for it. Charter offered no justification in its briefing, instead taking the position that the Agreement was "fundamentally mutual." Neither did it urge any justification in the Court of Appeal. Only when prodded at oral argument before us did Charter assert that certain claims were excluded from arbitration because those claims "require[d] quick action." Charter explained that the Agreement is "a nationwide agreement," that "not every state has a provision . . . that allows arbitrating parties to go into court to get . . . quick relief," and that it "decided to carve out those claims in their entirety."

"When an appellant fails to raise an issue in the opening brief, raising it for the first time in a reply brief or at oral argument, we generally decline to address the issue or address it in a summary manner." (*People v. Grimes* (2018) 60 Cal.4th 729, 757.) "Obvious reasons of fairness militate against consideration of an issue raised" so late. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.) Bearing those considerations in mind, we decline to address the sufficiency of Charter's proffered justification. In the absence of a cognizable justification, properly asserted, we "must assume" the Agreement's lack of mutuality is unconscionable. (See *Armendariz, supra,* 24 Cal.4th at p. 120.)

### 2. *Filing Time Limits*

The Agreement places time limits on the filing of covered claims. It requires the "aggrieved party" to "give written notice of the claim, in the manner required by this Agreement, within the time limit established by the applicable statute of limitations for each legal claim being asserted." It further provides that, "[t]o be timely, any claim that must be filed with

an administrative agency or body as a precondition or prerequisite to filing the claim in court, must be filed with Solution Channel within the time period by which the charge, complaint or other similar document would have had to be filed with the agency or other administrative body."

The Court of Appeal held this provision unconscionable, explaining that "the outside limit to file a FEHA *lawsuit*" when the Agreement was executed "could have been as long as three years."[4]  (Italics added.)  Under the Agreement, however, a FEHA claim had to be filed with Solution Channel within one year, the applicable deadline for filing an administrative claim. The Court of Appeal concluded the filing limitation was unconscionable for two reasons.  First, "it cuts the period that would otherwise apply to file a FEHA action in court by as much as two years."  Second, it raised the possibility that Ramirez would "be compelled to arbitrate before DFEH has completed its investigation and issued a 'right-to-sue' letter."

The Court of Appeal was correct.  It is settled that parties may agree, in an arbitration agreement or otherwise, to shorten

---

[4]  The Agreement was executed in 2019.  At that time, an employee had one year from an employer's discriminatory act to file a FEHA claim with DFEH.  (*Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 730 (*Baxter*).)  DFEH then had up to one year from the filing of the claim to complete its investigation and issue a right-to-sue letter.  (Gov. Code., § 12965, subd. (c)(1)(A).)  The employee then had one year after the issuance of the right-to-sue letter to file a lawsuit alleging the FEHA claims set out in the administrative claim.  (*Baxter*, at p. 730.)  A 2020 amendment extended "the time for filing [an administrative FEHA] claim to three years from the date of the challenged conduct."  (*Brome v. Dept. of the California Highway Patrol* (2020) 44 Cal.App.5th 786, 793, fn. 2.)

the limitations period applicable to a claim.  (See *Fageol Truck & Coach Co. v. Pacific Indemnity Co.* (1941) 18 Cal.2d 748, 753; *Ellis v. U.S. Security Associates* (2014) 224 Cal.App.4th 1213, 1222 (*Ellis*).)  However, the shortened limitations period must be reasonable.  (*Ellis*, at p. 1222; see also *Baxter*, *supra*, 16 Cal.App.5th at p. 731.)  *Ellis* held that an agreement imposing a six-month limitation on the filing of any employee claim, including a FEHA claim, violated public policy.  (*Ellis*, at p. 1225.)  The court reasoned an employee would "necessarily" have at least two years to file a FEHA lawsuit.  (*Ellis*, at p. 1225.) Thus, the Legislature had determined that two years was " 'sufficient . . . for the effective pursuit of the judicial remedy.' " (*Ibid.*, citation omitted.)  By comparison, the contractual six-month limitations period did not give Ellis sufficient time to vindicate her statutory rights.  (*Ibid.*)  Further, the "shortened limitation period would thwart [an] aspect of the FEHA that is critical in some cases:  the administrative enforcement by the DFEH itself."  (*Id.*, at p. 1226.)  The court noted the filing of an administrative claim was " 'often the only remedy for employees with modest salaries and small claims; they need [DFEH] because they are not likely to find a private lawyer to represent them.' "  (*Ibid.*, citation omitted.)  The six-month limitations period would "effectively eliminate[] any meaningful participation by [DFEH]."  (*Ibid.*)  These factors rendered the contractual limitations period unreasonable.  (*Ibid.*)

*Baxter*, *supra*, 16 Cal.App.5th 713 reached a similar conclusion.  There, an employment arbitration agreement provided that, if a claim "requires the filing of a charge with an administrative agency before a court action may be instituted," the deadline for an arbitration claim was "the administrative agency filing deadline."  (*Id.* at p. 730.)  Thus, as in this case, a

FEHA claim had to be submitted to arbitration within one year. (*Baxter*, at p. 730.) *Baxter* held this shortened limitations period was unconscionable. (*Id.* at p. 732.) Following *Ellis*, it reasoned that "[r]educing the time to pursue a claim by as much as two-thirds does not provide sufficient time to vindicate an employee's statutory rights under [FEHA]."**5** (*Baxter*, at p. 732.)

The relevant circumstances here are identical to those in *Baxter*. The Agreement requires FEHA claims to be submitted to arbitration. The filing limitation provision requires that any such claim be filed with Solution Channel within the one-year period to submit an administrative claim to DFEH. This limitation truncates the period the Legislature has determined employees need to effectively vindicate their rights. As a result, it potentially deprives Charter employees of meaningful DFEH participation. It is "problematic to require [an] employee to arbitrate statutory FEHA claims before an administrative investigation can be conducted." (*Baxter*, *supra*, 16 Cal.App.5th at p. 734.) The "involvement of the DFEH serves an important function [and] ' "may be helpful . . . because it requires a prompt, detailed response from the employer, giving the employee a free, quick look at the defenses the employer is likely to raise." ' " (*Ibid.*, quoting *Ellis*, *supra*, 224 Cal.App.4th at p. 1226.) The filing limitation substantially shortens the time for fully pursuing a FEHA claim and may preclude a DFEH investigation, rendering it substantively unconscionable.

---

**5** Other Courts of Appeal reached similar conclusions. (See *Magno, supra,* 1 Cal.App.5th at p. 291; *Penilla v. Westmont Corp.* (2016) 3 Cal.App.5th 205, 222; *Ali v. Daylight Transport, LLC* (2020) 59 Cal.App.5th 462, 478.)

Charter lodges two arguments against this conclusion. First, it argues the limitation provision is ambiguous and should be construed in a way that renders it valid rather than unenforceable. According to Charter, the first sentence of the clause indicates that the "normal statute of limitations" applies to any claim submitted to arbitration, whereas the second sentence provides a shorter limitations period for certain claims that must be filed with an administrative agency before being filed in court. Given this "ambiguity," Charter argues the provision "should be interpreted in a way to make the Agreement operative." Charter relies on the rule that ambiguous terms in a contract should be construed in favor of enforceability and validity where it can be done without violating the parties' intent. (See, e.g., Civ. Code, § 1643.) Charter urges we should construe the provision to allow an employee the same time to file a FEHA claim in arbitration as he or she would normally have to file such a claim in court.

We reject this strained interpretation. The principle Charter cites applies when a contract contains a genuine ambiguity. (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1473 (*Roman*).) It does not apply when ambiguity is absent. "[W]hen the language of a contract is plain and unambiguous it is not within the province of a court to rewrite or alter by construction what [the parties have] agreed upon." (*Crow v. P.E.G. Construction Co.* (1957) 156 Cal.App.2d 271, 278.) The relevant language is plain and unambiguous. The first sentence creates a general limitations period for all claims covered by the Agreement. The second sentence creates a specific limitations period, applicable to any claim that must be filed with an administrative agency before being filed in court. That type of claim must be filed with Solution Channel by the

deadline for submitting the administrative claim. We cannot rewrite or alter by construction the unambiguous terms the parties agreed upon.

Second, Charter argues the filing limitation had no impact on Ramirez in the context of this case because she sought an immediate right-to-sue letter and relinquished her right to a DFEH investigation. Stated differently, Charter argues that even if the clause might create unconscionable results in some instances, it did not do so for Ramirez. But whether a contract "works unconscionable hardship is determined with reference to the time when the contract was made" and cannot be resolved in hindsight, "considering circumstances of which the contracting parties were unaware." (*Yeng Sue Chow*, *supra*, 49 Cal.App.3d at p. 325.) Charter's reliance on post-formation circumstances violates this principle. Moreover, FEHA protections "are for the benefit of the entire public, not just [this] plaintiff[]." (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1249 (*Wherry*); see also *Ellis*, *supra*, 224 Cal.App.4th at p. 1220.) FEHA's protections, including its limitations periods, cannot be abrogated by private agreement. As Civil Code section 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."[6]

---

[6] Charter argues that, even if the filing limitation was unconscionable when the deadline for filing an administrative claim was one year, it is no longer so because the deadline for filing an administrative claim is now three years. (See *ante*, p. 19, fn. 4.) Again, an unconscionability evaluation looks to when the contract was made. Here, the Agreement was executed in 2019, when the applicable deadline for filing an administrative claim was one year.

### 3. *Limits on Discovery*

Under the Agreement, an "arbitrator will decide all discovery disputes related to the arbitration." The Guidelines provide greater detail in three paragraphs under the heading "Exchanging Information and Preparing for Hearing." The parties are allowed 90 days "to exchange information and take depositions." During that time, each party is "permitted to take up to four (4) depositions and allowed up to 20 total interrogatories (including subparts) and up to 15 total requests for documents to the other party." Any "disagreements regarding the exchange of information or depositions will be resolved by the arbitrator to allow a full and equal opportunity to all parties to present evidence that the arbitrator deems material and relevant to the resolution of the dispute."

*Armendariz, supra*, 24 Cal.4th 83 provided a standard that many cases have used to evaluate the validity of discovery limits. A brief review will provide context. The *Armendariz* plaintiffs sued their employer for FEHA violations, and the employer moved to compel arbitration. (*Armendariz*, at p. 92.) In opposition, the plaintiffs first argued that a mandatory agreement to arbitrate claims arising under a state antidiscrimination statute, like FEHA, is prohibited. We rejected that broad argument, but held that arbitration of a claim based on nonwaivable statutory civil workplace rights could only be compelled if the agreement satisfied five minimum requirements. Such an agreement "is lawful if it '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the

arbitration forum.' "[7] (*Armendariz*, at p. 102, quoting *Cole v. Burns Intern. Security Services* (D.C. Cir. 1997) 105 F.3d 1465, 1482.)

As to discovery, we stated that parties to an arbitration clause can agree "to something less than the full panoply of discovery provided" in the Code of Civil Procedure (*Armendariz*, *supra*, 24 Cal.4th at pp. 105−106), but that "adequate discovery is indispensable for the vindication of FEHA claims" (*Armendariz*, at p. 104).[8] Although the *Armendariz* agreement contained no discovery provision at all (*id.* at p. 92), we concluded the absence of such a provision did not automatically render the plaintiff's FEHA claim inarbitrable. (*Armendariz*, at p. 106.) Instead, we "infer[red] that when parties agree to arbitrate statutory claims, they also implicitly agree, *absent*

---

[7] Charter criticizes the Court of Appeal for failing to address the Agreement's purported compliance with *Armnedariz*'s five requirements. As *Fitz*, *supra*, 118 Cal.App.4th 702, explained, "[t]he *Armendariz* requirements are an application of general state law contract principles regarding the unwaivability of public rights in the arbitration context." (*Fitz*, at p. 713.) To be enforceable, an agreement to arbitrate "public rights" — which are those rights "that affect ' "society at large" rather than the individual' and include discrimination claims under FEHA" (*Fitz*, at p. 711) — "must satisfy the *Armendariz* requirements" and "must be conscionable" (*Fitz*, at p. 713). Here, Ramirez only challenged enforcement on unconscionability grounds. Whether an agreement satisfies *Armendariz*'s requirements may inform the determination whether it or any of its provisions is unconscionable, but the two inquiries are distinct. This may explain why the Court of Appeal did not separately address the Agreement's purported compliance with *Armendariz.*

[8] Code of Civil Procedure section 1283.05 establishes rules regarding discovery that can be obtained in arbitration proceedings under the CAA.

*express language to the contrary*, to such procedures as are necessary to vindicate that claim." (*Ibid.*, italics added.) Accordingly, we held that "whether or not the employees [were] entitled to the full range of discovery provided in Code of Civil Procedure section 1283.05, they are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s)."[9] (*Armendariz*, at p. 106.)

*Armendariz* stands for the principle that an arbitration agreement required as a condition of employment must generally permit employees sufficient discovery to adequately arbitrate any statutory claims. The scope of what discovery is sufficient is determined by the arbitrator. Here, Ramirez argued the discovery provision was substantively unconscionable because it allowed for only four depositions while she would need at least seven to substantiate her claims.[10] The trial court rejected her argument, but the Court of Appeal did not. It reasoned that while Ramirez had estimated, without dispute from Charter, that she needed to take at least seven depositions, the discovery provision limited her to four and the

---

[9]    *Armendariz* held that the arbitration agreement there was unconscionable and unenforceable because it lacked mutuality and did not permit recovery of the full range of damages normally available to a plaintiff under FEHA. (*Armendariz*, *supra*, 24 Cal.4th at pp. 120−121.) The opinion did not address the unconscionability of any contractual discovery limits or lack thereof. (*Id.* at pp. 113−121.)

[10]    Ramirez stated she would need to depose her former supervisor, a human resources representative, the four people hired by her former supervisor during her pregnancy leave, and the person most knowledgeable at Charter regarding its human resources and pregnancy leave policies.

arbitrator had no authority to expand that number.  As a result, it concluded the authorized discovery was inadequate to permit a fair pursuit of her claims.

One difficulty with that analysis is that the Court of Appeal looked to specific circumstances that only arose after the contract was executed.  As noted, an unconscionability assessment focuses on circumstances known at the time the agreement was made.  (*Yeng Sue Chow*, *supra*, 49 Cal.App.3d at p. 325.)  The Court of Appeal acknowledged this general principle, but reasoned that other courts had "consistently assessed unconscionability for limitations on discovery as applied to a particular plaintiff."  The Court of Appeal is correct that several appellate decisions have assessed the unconscionability of discovery provisions in the manner described.  (See *Baxter*, *supra*, 16 Cal.App.5th at pp. 727–730; see also *De Leon v. Pinnacle Property Management Services LLC* (2021) 72 Cal.App.5th 476, 489; *Davis*, *supra*, 53 Cal.App.5th 897, 912; *Torrecillas*, *supra*, 52 Cal.App.5th at p. 497; *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 405–406; *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494, 513–514 (*Ontiveros*).)  This approach to addressing unconscionability challenges to discovery clauses in arbitration agreements seems to be taking hold, and it clearly looks to post-contract formation circumstances.  We disapprove this line of reasoning.

The assessment of whether a discovery clause is unconscionable should focus on general factors that can be examined without relying on subsequent developments.  Those factors include the types of claims covered by the agreement, the amount of discovery allowed, the degree to which that amount may differ from the amount available in conventional litigation,

27

any asymmetries between the parties with regard to discovery, and the arbitrator's authority to order additional discovery. As *Kho, supra*, 8 Cal.5th 111 explained, "a substantive unconscionability analysis is sensitive to 'the context of the rights and remedies that otherwise would have been available to the parties.' [Citation.] We must examine both the features of the dispute resolution adopted as well as the features eliminated." (*Id*. at p. 130.) Allowing the arbitrator to deviate from agreed-upon default discovery limits ensures that neither party will be unfairly hampered in pursuing a statutory claim based on circumstances that arise post-formation. We note that giving the arbitrator authority to expand discovery based on *Armendariz*'s requirement is one way the adequacy concern can be addressed. We do not foreclose other formulations that ensure adequate discovery to vindicate a specific claim.

The second difficulty with the Court of Appeal's analysis is that it misinterpreted the scope the arbitrator's authority. As mentioned, the Agreement states the "arbitrator will decide all discovery disputes related to the arbitration" and the Guidelines provide that "[a]ny disagreements regarding the exchange of information or depositions will be resolved by the arbitrator to allow a full and equal opportunity to all parties to present evidence that the arbitrator deems material and relevant to the resolution of the dispute." The Court of Appeal held that language empowered the arbitrator to resolve disagreements as to "things like the identity of persons sought to be deposed, objections made during depositions, and the dates, location, and duration of depositions," but not to order additional depositions.

There is no compelling reason to construe the applicable provisions in such a limited way. While the language could have been more precise, it seems clear the Agreement and the

Guidelines give the arbitrator the authority to resolve "all discovery disputes" in a manner that allows "a full and equal opportunity" to discover and present relevant and material evidence. Understood in this way, if the arbitrator determined additional depositions were necessary to satisfy the *Armendariz* requirement, the Guidelines would permit the arbitrator to order expanded discovery. Normally, we assume the arbitrator will act reasonably and in conformity with the law. (*Dotson*, *supra*, 181 Cal.App.4th at p. 981.)

At a minimum, the clause is ambiguous as to whether the arbitrator can order additional discovery. Where a contract is susceptible to two interpretations, one which renders it valid and the other which renders it void, a court should select the interpretation that makes the contract valid. (Civ. Code, §§ 1643, 3541; see also *Hammond v. Haskell* (1910) 14 Cal.App. 522, 526.) Construing the Agreement and Guidelines to prevent the arbitrator from ordering additional discovery deemed appropriate could render the provisions invalid under *Armendariz*. (See *Fitz*, *supra*, 118 Cal.App.4th at pp. 717−719.) However, if construed to allow the arbitrator to order additional discovery as needed to allow a full and fair exploration of the issues in dispute, the discovery provisions would be valid. (See *Armendariz*, *supra*, 24 Cal.4th at p. 106; see also *Roman*, *supra*, 172 Cal.App.4th at pp. 1475−1476; *Dotson, supra*, 181 Cal.App.4th at pp. 982−984.) Even if we were to assume for the sake of argument that the Agreement and the Guidelines are susceptible to either interpretation, we would conclude the arbitrator has authority to order additional discovery if the arbitrator determines that action is necessary to allow fair arbitration of the claim. Such an interpretation of the provisions eliminates any unconscionability.

### 4. *Award of Interim Attorney Fees*

Under Section K of the Agreement, the parties agreed "that the failure or refusal of either party to submit to arbitration as required by this Agreement will constitute a material breach of this Agreement. If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting submits to arbitration following the commencement of the action or proceeding, the party that resisted arbitration will be required to pay to the other party all costs, fees and expenses that they incur in compelling arbitration, including, without limitation, reasonable attorneys' fees." The trial court found this clause was "unusual, lack[ed] mutuality, and produce[d] overly harsh results." The Court of Appeal agreed, holding the clause is unenforceable because it violates FEHA's asymmetric rule regarding awards of costs and fees. We agree with the courts below that the clause has the potential to result in an unlawful award of attorney fees and is substantively unconscionable.

"Several well-established rules govern [the] imposition of fees and costs incurred in actions under" FEHA. (*Patterson*, *supra*, 70 Cal.App.5th at p. 477.) FEHA grants a trial court discretion to award "reasonable attorney's fees and costs" to "the prevailing party." (Gov. Code, § 12965, subd. (c)(6).) However, it also provides that "a prevailing *defendant* shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so." (Gov. Code, § 12965, subd. (c)(6), italics added.) The legislative intent behind this asymmetric rule is "clear[:] To allow a prevailing FEHA defendant to collect fees and costs . . . when the plaintiff brought a potentially meritorious suit that ultimately did not

succeed would undercut the Legislature's intent to promote vigorous enforcement of our civil rights laws." (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 949.)

*Armendariz*, *supra*, 24 Cal.4th 83 articulated a second rule governing FEHA fees and costs. "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz*, at pp. 110–111.) We reasoned that this rule would "ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual costs incurred during litigation." (*Id.* at p. 111.)

Read together, the statutes and *Armendariz* make clear that an arbitration agreement imposed as a condition of employment cannot require an employee to pay attorney fees to the employer in the arbitration of a statutory claim, unless the arbitrator finds that the action was frivolous, unreasonable, or groundless when brought, or that the employee continued to litigate after it clearly became so. The Court of Appeal correctly concluded that Section K could violate the dictates of FEHA and *Armendariz*. The provision unambiguously requires an award of attorney fees, even if the moving party is a defendant in a FEHA action and the arbitrator has made no finding of frivolity, groundlessness, or continued litigation. Permitting payment of attorney fees in these circumstances would be inconsistent with *Armendariz*'s directive that a mandatory arbitration agreement cannot require employees to bear any expense that they would not be required to bear if they were able to bring the action in court. The provision thus creates a potential obligation to pay costs only in an arbitral setting. The provision would also

undermine the public policy embodied in FEHA's asymmetric rule. As a result, the clause is unconscionable.

Moreover, an unconscionability evaluation "often requires inquiry into the 'commercial setting, purpose, and effect' of the contract or contract provision." (*Sanchez*, *supra*, 61 Cal.4th at p. 911.) Here, the potential effects of Section K support a finding of unconscionability because the clause does not take into account a situation in which some arguments made by the resisting party are successful. It is possible that a court could find parts of the Agreement unconscionable, sever those parts from the Agreement, and enforce the remainder by compelling arbitration. In such a case, Charter could argue that Section K should be read to require Ramirez to pay Charter's fees and costs because "arbitration [would] in fact [have been] compelled." In other words, Charter could urge that Ramirez should be required to pay Charter's attorney fees even if she successfully asserted that parts of the Agreement as written were unenforceable, but the court cured those defects by severing the offending provisions. Though we take no view here on whether Charter would prevail, the possibility of such an outcome could chill an employee's right to challenge the enforceability of an arbitration agreement. (See Civ Code, § 1281.2; see also *Sargon Enterprises, Inc. v. Browne George Ross LLP* (2017) 15 Cal.App.5th 749, 770.)

Charter resists this conclusion, relying on *Patterson*, *supra*, 70 Cal.App.5th 473, which interpreted the same agreement involved here. Patterson sued Charter, alleging FEHA violations, and Charter moved to compel arbitration. Patterson opposed, arguing the Agreement was unconscionable and unenforceable. Unlike this case, the trial court *granted* the

motion to compel.[11] (*Patterson*, at pp. 478−479.) The trial court then granted Charter's attorney fee request, reasoning that FEHA's asymmetric rule did not apply. (*Patterson*, at p. 480.) Patterson sought relief via a second petition for writ of mandate, arguing the fee award violated FEHA's asymmetric attorney fee rule. (*Patterson*, at p. 480.)

The Court of Appeal began by clarifying the issue to be resolved. The court noted it was not reviewing the order compelling the parties to arbitrate. (*Patterson*, *supra*, 70 Cal.App.5th at p. 486, fn. 5.) Rather, it assumed the Agreement was enforceable and addressed the validity of the fee award. (*Id.* at pp. 484−486.) As to that question, the court held that, where "there is no other contract issue . . . to be resolved [and] [t]he only contract dispute [is] the enforceability of the arbitration agreement," the prevailing party "is entitled to its fees under [Section K] *to the extent not otherwise prohibited or limited by FEHA.*" (*Id.* at p. 486, italics added.)

*Patterson* went on to consider how FEHA's asymmetric rule applied. Several appellate decisions have held that arbitration agreements covering FEHA claims were unconscionable because they authorized the recovery of attorney fees by the prevailing party or required each party to bear its own fees and costs, rather than adopting FEHA's asymmetric rule. (See *Patterson*, *supra*, 70 Cal.App.5th at p. 488, citing *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 395, disapproved on another ground in *Baltazar v. Forever 21, Inc.*, *supra*, 62 Cal.4th at p. 1246; accord *Wherry*, *supra*, 192

---

[11] The Court of Appeal summarily denied Patterson's petition for writ of mandate challenging that ruling. (*Patterson*, *supra,* 70 Cal.App.5th at p. 479.)

Cal.App.4th at p. 1249; *Serpa, supra*, 215 Cal.App.4th at pp. 709−710.) Analogizing to those cases, *Patterson* reasoned that "[p]ermitting Charter to recover its attorney fees for a successful motion to compel arbitration in a pending FEHA lawsuit[,] without a showing the plaintiff's [opposition] was objectively groundless," would deny the "plaintiff the rights guaranteed by [FEHA] with a corresponding chill on access to the courts for any employee or former employee who has an arguably meritorious argument that the [Agreement] is unenforceable. Even with a strong claim of unconscionability, [the] employee might not pursue it and risk a substantial award of attorney fees before arbitration begins." (*Patterson*, at p. 489.) Citing the "strong public policy favoring arbitration" and "the requirement we interpret the provisions in a contract in a manner that render[s] them legal rather than void when possible," the Court of Appeal construed Section K "to impliedly incorporate [FEHA's] asymmetric rule for awarding attorney fees and costs." (*Patterson*, at p. 490.) The court cited *Armendariz*, supra, 24 Cal.4th 83, *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665 (*Pearson Dental*), and *Roman, supra*, 172 Cal.App.4th 1462 for support. Construed in that manner, *Patterson* stated the provision would "preclude an award of attorney fees and costs to Charter following a successful motion to compel arbitration absent a showing that [the employee's] opposition to the motion was frivolous, unreasonable or groundless." (*Patterson*, at p. 490.) The matter was then remanded to the trial court with directions to vacate its fee award and "conduct a hearing to make the required findings" if Charter continued to pursue its request. (*Ibid*.)

Charter urges us to construe Section K of the Agreement as *Patterson* did.[12] Even if we conclude the clause may conflict with FEHA's asymmetric rule in some instances, Charter urges us to interpret the provision to "render it lawful by reading it to only allow attorneys' fees where the plaintiff's opposition to the motion to compel arbitration was frivolous or groundless." Charter cites Civil Code sections 1643 and 3541, along with the cases cited by *Patterson*, for support.

Charter's reliance on *Patterson* is misplaced for several reasons. First, *Patterson* did not expressly hold that Section K complies with FEHA. The court noted it had summarily denied the plaintiff's writ petition challenging the order compelling arbitration, and that the order would "be reviewable on appeal from a final judgment." (*Patterson*, *supra*, 70 Cal.App.5th at p. 486, fn. 5.) The summary denial of a petition for writ of mandate generally is not res judicata as to the legal issues presented (see *Hagan v. Superior Court* (1962) 57 Cal.2d 767, 770) and it is " 'axiomatic that cases are not authority for propositions not considered' " (*Sonic*, *supra*, 57 Cal.4th at p. 1160). *Patterson* does not stand for the proposition that Section K is conscionable.

On the contrary, *Patterson*'s reasoning suggests the provision is not enforceable in all its potential applications. To

---

[12]    In the alternative, Charter argues that Section K is not unconscionable "because it is outside of FEHA's purview." According to Charter, the clause "deals with the enforcement of the Agreement, not with the underlying FEHA action." We disagree. The Agreement covers a variety of claims, including FEHA claims. Section K authorizes an award of attorney fees on a motion to compel arbitration of a covered claim. FEHA limits the availability of fee and cost awards to prevailing defendants in FEHA actions. To the extent Section K tests those limits in a FEHA-based claim, it is within FEHA's purview.

bring Section K into compliance with FEHA, *Patterson* construed the clause as if it incorporated an exception modeled on FEHA's asymmetric cost and fee rule. Under *Patterson*'s construction, the provision would allow Charter to recover attorney fees it incurred in compelling arbitration of a FEHA claim, but only if the employee's opposition to Charter's motion to compel was found frivolous, unreasonable, or groundless. *Patterson* did not conclude Section K is enforceable as written. At most, it stands for the proposition that an attorney fee award to Charter could be lawful if additional findings, not required by the Agreement, were made.

Second, the authorities *Patterson* relied on in interpreting Section K do not support its construction. *Patterson* cited Civil Code sections 1643 and 3541. Civil Code section 3541 sets out a maxim of jurisprudence, applicable to all contracts, stating a preference for "[a]n interpretation which gives effect" over "one which makes void." Civil Code section 1643 establishes a rule of contract interpretation, requiring a contract to "receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." We have previously applied these code sections here, when addressing any potential ambiguity in the applicable discovery provisions.

Section K, however, is not ambiguous. It clearly requires payment of attorney fees to a party who successfully compels arbitration. The payment obligation is unqualified. Civil Code sections 1643 and 3541 state a legislative preference for an interpretation that is lawful, valid, and effective, but that preference is circumscribed by the parties' clearly agreed-upon language. *Patterson*'s interpretation is inconsistent with the statutes upon which it relied. (See *Serpa, supra*, 215

36

Cal.App.4th at p. 709 [declining to read FEHA's asymmetric rule into an arbitration agreement that unambiguously required each party to bear its own attorney fees].)

*Patterson* also cited *Armendariz*, *supra*, 24 Cal.4th 83, *Pearson Dental*, *supra*, 48 Cal.4th 665, and *Roman*, *supra*, 172 Cal.App.4th 1462 to support its construction.  According to *Patterson*, *Pearson Dental* and *Roman* stand for the proposition that courts must interpret contract provisions in a manner that "render[s] them legal rather than void when possible." (*Patterson*, *supra*, 70 Cal.App.5th at p. 490.)  This characterization sweeps too broadly.  Indeed, *Roman* and *Pearson Dental* are consistent with our interpretation of Section K.  If a contractual provision is ambiguous, and one interpretation would render it valid while another would render it void, a court should select the interpretation that renders it valid. (*Roman*, at p. 1473; *Pearson Dental*, at p. 682; Civ. Code, §§ 3541, 1643.)  Neither case suggests a court can construe an unambiguous contractual clause to mean something it does not say, in violation of the parties' clear and agreed-upon language.

*Patterson* also suggested its contractual interpretation was consistent with our approach in *Armendariz*. (*Patterson*, *supra*, 70 Cal.App.5th at p. 490.)  Again, the characterization of *Armendariz* is overbroad.  As mentioned, *Armendariz* held "that a mandatory employment arbitration agreement that contains within its scope the arbitration of FEHA claims impliedly obliges the employer to pay all types of costs that are unique to arbitration." (*Armendariz*, *supra*, 24 Cal.4th at p. 113.)  The *Armendariz* agreement contained no provision governing arbitration costs. (*Ibid.*)  In light of the agreement's silence on the subject, *Armendariz* inferred that the parties had agreed to allocate costs, expenses, and fees in a manner consistent with

applicable legal standards. *Armendariz* did not rewrite the contract to avoid the unconscionability embedded in its unambiguous terms. It inferred the agreement complied with applicable legal standards precisely because the parties had not unambiguously agreed otherwise.

Finally, *Patterson* suggested its interpretation was supported by the "strong public policy favoring arbitration." (*Patterson, supra,* 70 Cal.App.5th at p. 490.) But that policy "make[s] 'arbitration agreements as enforceable as other contracts, . . . not more so.'" (*Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 418 [142 S.Ct 1708, 1713].) Section K is unconscionable because it unambiguously violates FEHA. The policy favoring arbitration cannot save it.[13] *Patterson v.*

---

[13] In its opinion, the Court of Appeal expressed concern about the second sentence of Section K of the Agreement, which states that, aside from administrative fees and the arbitrator's fees and expenses, "[a]ll other costs, fees and expenses associated with the arbitration, including without limitation each party's attorneys' fees, will be borne by the party" incurring them. The court was concerned the clause might "deprive[] an employee of his or her statutory right to recover attorney fees if the employee prevails on a FEHA claim." However, because neither party had questioned the validity of that part of Section K, the Court of Appeal did not delve into the matter. The parties likewise did not address the question in their briefing here. Amicus curiae Jamin Soderstrom has done so in an amicus brief. He also urges that three more of the Agreement's provisions are unconscionable: (1) Section D, which deals with the capacity in which each party may file covered and excluded claims; (2) Section L, which deals with the parties' jury trial rights; and (3) Section Q, which is a severance clause. Ramirez has not challenged the enforceability of any of those provisions here. We express no view on their validity or enforceability. The Court of Appeal remains free on remand to entertain supplemental briefing if it deems such briefing will be helpful to its review.

*Superior Court, supra*, 70 Cal.App.5th 473 is disapproved to the extent it is inconsistent with the views expressed herein.

### C. Severance

Civil Code section 1670.5, enacted in 1979, "codifie[s] the principle that a court can refuse to enforce an unconscionable provision in a contract." (*Armendariz, supra*, 24 Cal.4th at p. 114.) It provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).) If a contractual clause is found unconscionable, the court may, in its discretion, choose to do one of the following: (1) refuse to enforce the contract; (2) sever any unconscionable clause; or (3) limit the application of any clause to avoid unconscionable results. (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1273−1274 (*Farrar*).) The "strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement." (*Roman, supra*, 172 Cal.App.4th at p. 1477.) Though the "statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement," it "also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability." (*Armendariz, supra*, 24 Cal.4th at p. 122.) The trial court's decision to act as Civil Code section 1670.5 permits is reviewed for abuse of discretion. (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144 (*Murphy*).)

Here, the trial court found three aspects of the Agreement unconscionable: the time limits imposed on the filing of certain claims; the allowance for an award of attorney fees to Charter without a finding the plaintiff's claim was frivolous or groundless; and the allowance for an award of attorney fees for a successful motion to compel arbitration. Noting that there was " 'more than one unlawful provision' " and "that 'there [was] no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement,' " the court determined that severance was improper and refused to enforce the Agreement. The Court of Appeal affirmed that decision. It reasoned that severance "may be properly denied when the agreement contains more than one unconscionable provision" and the unconscionable taint cannot be removed from the agreement by striking or restricting a single provision. The court concluded that it had identified "multiple defects" that "worked to Ramirez's distinct disadvantage," making a denial of severance "entirely reasonable."

Charter contends the lower courts erred. According to Charter, the Court of Appeal assumed that "while one or two provisions may be severed from an arbitration agreement, three or four is too many." Charter urges that there is no hard and fast rule regarding the number of provisions that may be severed from a contract. Here, Charter argues that all unconscionable provisions were collateral to the main purpose of the Agreement and therefore should have been severed, with the remainder of the Agreement enforced. Charter also argues the trial court and the Court of Appeal failed to account for Section Q of the Agreement, which provides that "if any portion or provision of this Agreement . . . is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction

and cannot be modified to be legal, valid, or enforceable, the remainder of this Agreement shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this Agreement."

*Armendariz*, *supra*, 24 Cal.4th 83 explained how a court should determine whether and how to exercise its discretion under Civil Code section 1670.5. As mentioned, in *Armendariz* we found two aspects of the challenged arbitration agreement unconscionable: its lack of mutuality; and the fact it did not permit recovery of damages normally available under FEHA. (*Armendariz*, *supra*, 24 Cal.4th at pp. 120–121.) We began by noting the dearth of authority considering "when a trial court abuses its discretion by refusing to enforce an entire agreement" and "what it means for an agreement to be permeated by unconscionability." (*Id.* at p. 122.) Therefore, we turned to "statutory and case law discussing . . . when it is proper to sever *illegal* contract terms." (*Ibid.*)

In particular, we noted Civil Code sections 1598 and 1599. Civil Code section 1598 provides that "[w]here a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void." Civil Code section 1599 provides that "[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." *Armendariz* observed that those statutes furnish "[t]wo reasons for severing or restricting illegal terms rather than voiding the entire contract." (*Armendariz*, *supra*, 24 Cal.4th at p. 123.) "The first is to

prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement — particularly when there has been full or partial performance of the contract." (*Id*. at pp. 123–124.) Second, "the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme." (*Id*. at p. 124.) We stated that the "overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance." (*Id*. at p. 124, quoting *Benyon v. Garden Grove Medical Group* (1980) 100 Cal.App.3d 698, 713.) We also noted that, in deciding to enforce a contract, the court "must have the *capacity* to cure the unlawful contract through severance or restriction of the offending clause." (*Armendariz*, at p. 124.) If the court lacks that capacity, it must refuse to enforce the contract. (*Id*. at p. 125.)

We concluded that the "basic principles of severability that emerge" from the statutes and case law regarding "illegal contracts appear fully applicable to the doctrine of unconscionability." (*Armendariz, supra*, 24 Cal.4th at p. 124.) We explained: "Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Ibid*.)

In *Armendariz,* "two factors weigh[ed] against severance" for the agreement at issue. First, the agreement contained "more than one unlawful provision; it has both an unlawful damages provision and an unconscionably unilateral arbitration clause. Such multiple defects indicate a systematic effort to

impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra,* 24 Cal.4th at p. 124.) "[G]iven the multiple unlawful provisions, the trial court did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose." (*Ibid.*)

Second, regarding the "agreement's lack of mutuality," we reasoned that "such permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." (*Armendariz, supra,* 24 Cal.4th at pp. 124−125.) Instead, "the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms." (*Id.* at p. 125.) We observed that neither Civil Code section 1670.5 nor the CAA authorized "reformation by augmentation," and concluded that because "a court is unable to cure this unconscionability through severance or restriction and is not permitted to cure it through reformation and augmentation, it must void the entire agreement." (*Armendariz,* at p. 125.)

Charter argues the trial court and the Court of Appeal erroneously assumed that a bright line rule prohibits severance where an agreement has more than one unconscionable provision. Neither court stated its reliance on such an assumption expressly, though both did highlight the number of unconscionable provisions as a key factor in their decisions to refuse to enforce the Agreement. We note that some Courts of Appeal have treated the severance question as more of a quantitative inquiry than a qualitative one. (See, e.g., *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 90; *Ontiveros, supra,* 164 Cal.App.4th at p. 515; *Murphy,*

*supra*, 156 Cal.App.4th at p. 149.)  However, other courts have rejected the proposition that "more than a single unconscionable provision in an arbitration agreement precludes severance." (*Lange*, *supra*, 46 Cal.App.5th at p. 454.)  As *Lange* made clear, the "presence of multiple unconscionable clauses is merely one factor in the trial court's inquiry, it is not dispositive."  (*Ibid.*; see also *Bolter v. Superior Court* (2001) 87 Cal.App.4th 900, 911.)

Here, we clarify that no bright line rule *requires* a court to refuse enforcement if a contract has more than one unconscionable term.  Likewise, a court is not *required* to sever or restrict an unconscionable term if an agreement has only a single such term.  Instead, the appropriate inquiry is qualitative and accounts for each factor *Armendariz* identified.  At the outset, a court should ask whether "the central purpose of the contract is tainted with illegality."  (*Armendariz*, *supra*, 24 Cal.4th at p. 124.)  If so, the contract cannot be cured, and the court should refuse to enforce it.  If that is not the case, the court should go on to ask first, whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary.  (See *Armendariz*, *supra*, 24 Cal.4th at pp. 124−125.)  If no "reformation is required," the offending provision can be severed or limited, and "the rest of the arbitration agreement left intact," then severance or restriction is the preferred course for provisions that are collateral to the agreement's main purpose. (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1075; see also *Armendariz*, at p. 124; *Farrar*, *supra*, 9 Cal.App.5th at p. 1275.) If the unconscionability cannot be cured by extirpating or limiting the offending provisions, but instead requires augmentation to cure the unconscionability,

then the court should refuse to enforce the contract. (*Mercuro, supra*, 96 Cal.App.4th at p. 185; see *id*. at pp 185–186.) Courts cannot "rewrite agreements and impose terms to which neither party has agreed." (*Sonic, supra*, 57 Cal.4th at p. 1143.)

Even if a contract *can* be cured, the court should also ask whether the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions. (*Armendariz, supra*, 24 Cal.4th at p. 124.) This part of the inquiry focuses on whether mere severance of the unconscionable terms would function to condone an illegal scheme and whether the defects in the agreement indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage. (*Ibid*.) If the answer to either question is yes, the court should refuse to enforce the agreement.

In conducting this analysis, the court may also consider the deterrent effect of each option. As *Mills v. Facility Solutions Group, Inc.* (2022) 84 Cal.App.5th 1035 explained, severing multiple unconscionable provisions from an agreement and enforcing the remainder could "create an incentive for an employer to draft a one-sided arbitration agreement in the hope employees would not challenge the unlawful provisions, but if they do, the court would simply modify the agreement to include the bilateral terms the employer should have included in the first place." (*Id*. at p. 1045.) Although there are no bright line numerical rules regarding severance, it is fair to say that the greater the number of unconscionable provisions a contract contains the less likely it is that severance will be the appropriate remedy.

Finally, if the contract contains a severance clause, the court should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced. (See *Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1229−1230; *Alvarez v. Altamed Health Services Corp.* (2021) 60 Cal.App.5th 572, 596; Civ. Code, § 1636.) That said, we note that the parties to an agreement cannot divest a trial court of its discretion under Civil Code section 1670.5 by including such a severance clause. (*Haydon v. Elegance at Dublin* (2023) 97 Cal.App.5th 1280, 1292.)

Accordingly, courts may liberally sever any unconscionable portion of a contract and enforce the rest when: the illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; *and* enforcing the balance of the contract would be in the interests of justice. (See *Armendariz, supra*, 24 Cal.4th at pp. 124−125; accord *Marathon Entertainment, Inc. v. Blasi* (2008) 42 Cal.4th 974, 991; *Adair v. Stockton Unified School Dist.* (2008) 162 Cal.App.4th 1436, 1450.) Here, the Court of Appeal concluded that four aspects of the Agreement are unconscionable. We concur as to three of the four but conclude the discovery rules imposed by the Agreement and the Guidelines are not unconscionable. That difference alone might not merit reversal of the Court of Appeal's judgment. However, for the reasons set out below, we conclude that reversal and remand for further proceedings is warranted.

First, it is not clear that the Court of Appeal would have affirmed the ruling had it reached the conclusion we draw regarding the Agreement's discovery limits. The court specifically identified the "unconscionable provision on depositions" as the one aspect of the Agreement and Guidelines

that could not be severed. Second, neither the trial court nor the Court of Appeal discussed how Section Q fit into its decision, and both courts focused great attention on the number of unconscionable provisions. As clarified here, the decision whether to sever unconscionable provisions and enforce the balance is a qualitative one, based on the totality of the circumstances. The court cannot refuse to enforce an agreement simply by finding that two or more collateral provisions are unconscionable as written and eschewing any further inquiry. Third, there remain open questions regarding the unconscionability and enforceability of certain of the Agreement's provisions. (See *ante*, p. 38, fn. 13.)

On remand, the Court of Appeal may consider the severance question anew, in light of its answers to those questions, and in a manner consistent with this opinion.

### D. FAA Preemption

The Agreement expressly provides that it "will be governed" by the FAA. The "overarching purpose" of the FAA "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 344.) Charter argues it would contravene the FAA to apply the general law of unconscionability and to refuse to sever the Agreement's unconscionable provisions and enforce the rest.

*Patterson* rejected a similar argument, stating that "Charter's abbreviated and overly broad discussion of FAA preemption . . . omit[ted] several fundamental principles of FAA jurisprudence." (*Patterson*, *supra*, 70 Cal.App.5th at p. 491.) As *Patterson* explained, although the FAA "requires courts to place arbitration agreements on an equal footing with other contracts

and to enforce them according to their terms," it also permits courts to declare arbitration agreements unenforceable upon the same grounds as any other contract, including unconscionability. (*Patterson*, at p. 491, citing *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 961–962.) Thus, it does not contravene the FAA to find that certain provisions of the Agreement are unconscionable. The FAA seeks to treat interpretation and enforcement of arbitration agreements equally with other contracts. Such treatment continues to recognize the severance of unconscionable claims as an option for the court's consideration. As *McGill* observed, it was not Congress's intent to make arbitration agreements *more* enforceable than other contracts. (*McGill*, at p. 962.)

The approach adopted here is not hostile to arbitration. We continue to note the strong federal and state policies and preferences for treating arbitration agreements like any other contract and favoring their enforcement. However, other statements of policy recognize that a favorable view of arbitration does not undermine a solicitude to the potential for overreaching when the parties are of unequal bargaining power. This is particularly so when a proposed agreement unfairly impinges on the rights and protections the Legislature has taken care to recognize and protect. The approach we adopt here gives the courts authority to consider all relevant statements of policy bearing on the question of contract enforcement.

## III.  DISPOSITION

The Court of Appeal's judgment is reversed.  The matter is remanded for further proceedings consistent with our decision.


**CORRIGAN, J.**

**We Concur:**

**GUERRERO, C. J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Ramirez v. Charter Communications, Inc.

_____

**<u>Procedural Posture</u>** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 75 Cal.App.5th 365
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S273802
**Date Filed:** July 15, 2024

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** David J. Cowan

_____

**Counsel:**

Hill, Farrer & Burrill, James A. Bowles, Casey L. Morris, Elissa L. Gysi; Seyfarth Shaw and Kiran A. Seldon for Defendant and Appellant.

Eimer Stahl, Robert E. Dunn; and Fred J. Hiestand for the Chamber of Commerce of the United States of America and the Civil Justice Association of California as Amici Curiae on behalf of Defendant and Appellant.

Coblentz Patch Duffy & Bass, Fred Alvarez, Anthony D. Risucci and Tom Lin for Employers Group as Amicus Curiae on behalf of Defendant and Appellant.

Panitz Law Group and Eric A. Panitz for Plaintiff and Respondent.

Soderstrom Law and Jamin S. Soderstrom for Lionel Harper, Hassan Turner, Luis Vazquez and Pedro Abascal as Amici Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kiran A. Seldon
Seyfarth Shaw LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
(310) 277-7200

Eric A. Panitz
Panitz Law Group APC
18000 Studebaker Road, Suite 700
Cerritos, CA 90703
(562) 924-7800

Jamin S. Soderstrom
Soderstrom Law PC
1 Park Plaza, Suite 600
Irvine, CA 92614
(949) 667-4700